UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| BIGFOOT ON THE STRIP, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) Case № 6:18-CV-03155 |
| RANDY WINCHESTER; EMILY WINCHESTER; and DANCING COW FARMS, | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

COME NOW, defendants Emily Winchester and Dancing Cow Farms, by and through their counsel of record, Jennifer R. Johnson of Hinkle Law Firm, LLC, and in support of their Motion to Dismiss Plaintiff's Petition. Dismissal is proper for the following reasons: as to Emily Winchester, for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); and as to Dancing Cow Farms, because (1) the sole proprietor, Randy Winchester, who operates Dancing Cow Farms has not been properly served with process and dismissal of Dancing Cow Farms is therefore proper pursuant to Rules 12(b)(4) and 12(b)(5); and (2) if Dancing Cow Farms has been properly served, this Court lacks personal jurisdiction over Dancing Cow Farms, a Kansas business/farm owned and operated by a Kansas resident and dismissal is proper pursuant to Rule 12(b)(2).

### I.     INTRODUCTION

Plaintiff filed the above-captioned action seeking recovery for damages allegedly sustained arising out of the publication, by Defendants, of a review on TripAdvisor. Plaintiff's claims include claims for libel, negligence and tortious interference, and seek to recover actual and punitive damages. Plaintiff also seeks injunctive relief.

On March 2, 2018, defendant Emily Winchester, along with her father, Randy Winchester, traveled to Branson, Missouri for the annual membership meeting of the Heartland Highland Cattle Association. The meeting was held on March 3, 2018 at 1:00 p.m. Following the meeting, Emily and Randy Winchester, along with other meeting attendees, were driven to Bigfoot Farms and paid ten dollars each to take the Bigfoot Safari Discovery Tour. They took that tour and then participated in other amusement offerings at the venue. Emily and Randy returned to Kansas, where they reside, on March 4, 2018. This is the only time they have ever visited the venue owned by Bigfoot on the Strip, or taken the Bigfoot Safari Discovery Tour.

After returning to Kansas, Randy Winchester reviewed his experience on the Bigfoot Safari Discovery Tour on the website, www.TripAdvisor.com. Following publication of his review, Darrell Henley, one of the members of Bigfoot on the Strip, LLC, made various efforts to contact Randy and Emily Winchester. Henley never spoke with Randy Winchester, but did reach Emily Winchester on her cell phone. She specifically told Mr. Henley that she did not publish the review. Henley thereafter continued calling Emily, and also continued in his efforts to contact Randy Winchester, including making calls to his home telephone in the late evening hours.

As a result of Mr. Henley's perceived harassment, Randy Winchester thereafter revised his TripAdvisor review, recounting Mr. Henley's behavior. Randy Winchester revised the review from his place of residence in Johnson County, Kansas.

Emily Winchester is a resident of Douglas County, Kansas. She lives at a home located at Dancing Cow Farms, a sole proprietorship owned by Randy Winchester, and provides some services to the farm. Randy Winchester is a resident of Johnson County, Kansas. Neither Emily nor Randy Winchester (individual or on behalf of Dancing Cow Farms) reside in Missouri or regularly transact business in Missouri. With the exception of a return call Emily made to Mr. Henley after receiving repeated calls from him, neither Emily nor Randy Winchester ever telephoned Mr. Henley or otherwise

contacted Mr. Henley or Bigfoot on the Strip through other agents or owners (with the exception of a response to a demand letter received from Plaintiff's attorneys herein). Emily and Randy Winchester's sole contact with the state of Missouri was the visit, as tourists, to the Plaintiff's attraction, on a short trip to the state.

Plaintiff contends the statements contained on the TripAdvisor review are false, defamatory, and have caused it to lose customers/business, and seeks to hail Defendants – its customers - into Court in the state of Missouri to address these allegations related to the review. As more fully outlined below, to do so would offend the notions of fair play and substantial justice. Emily Winchester does not have sufficient contacts with the state of Missouri to establish general or specific jurisdiction in this case. The same is true of Dancing Cow Farms, the sole proprietorship owned by Randy Winchester.

Further, because Dancing Cow Farms is not a separate legal entity, it also seeks dismissal from this action for improper service of process, in that it is a sole proprietorship owned by Randy Winchester, and Randy Winchester has not been served herein.

## II. STATEMENT OF FACTS RELEVANT TO PERSONAL JURISDICTION AND SERVICE OF PROCESS ON DANCING COW FARMS

1. On March 2, 2018, Emily Winchester and Randy Winchester traveled to Branson, Missouri for the annual membership meeting of the Heartland Highland Cattle Association. (Affidavit of Randy Winchester, attached hereto as Ex. A, ¶ 2; Affidavit of Emily Winchester, attached hereto as Ex. B, ¶ 2).

2. Following the meeting on March 3, 2018 at 1:00 p.m., Emily and Randy Winchester, along with other meeting attendees, were driven to Bigfoot Farms and paid ten dollars each to take the Bigfoot Safari Discovery Tour. (Ex. A, ¶ 3; Ex. B, ¶ 3).

3. They took that tour and then participated in other amusement offerings at the Bigfoot venue. (Ex. A, ¶¶ 3-4; Ex. B, ¶¶ 3-4).

4. Emily and Randy returned to Kansas, where they reside, on March 4, 2018. (Ex. A, ¶ 5; Ex. B, ¶ 5).

5. This is the only time they have ever visited the venue owned by Bigfoot on the Strip, or taken the Bigfoot Safari Discovery Tour. (Ex. A, ¶ 6; Ex. B, ¶ 6).

6. After returning to Kansas, Randy Winchester reviewed his experience on the Bigfoot Safari Discovery Tour on the website, www.TripAdvisor.com from his home in Johnson County, Kansas. (Ex. A, ¶ 7).

7. Following publication of his review, Darrell Henley made various efforts to contact Randy and Emily Winchester in Kansas. (Ex. A, ¶¶ 8-13; Ex. B, ¶¶ 7-10).

8. Henley never spoke with Randy Winchester, but did reach Emily Winchester on her cell phone in Kansas. (Ex. A, ¶¶ 8-13; Ex. B, ¶¶ 7-10).

9. Emily specifically told Mr. Henley that she did not publish the review. (Ex. B, ¶ 10).

10. Henley thereafter continued calling Emily, and also continued in his efforts to contact Randy Winchester, including making a call to Randy Winchester's home telephone in the late evening hours on a Saturday. (Ex. A, ¶¶ 8-13; Ex. B, ¶¶ 7-10).

11. As a result of Mr. Henley's perceived harassment, Randy Winchester revised his TripAdvisor review, recounting Mr. Henley's behavior. (Ex. A, ¶¶ 14-15).

12. Randy Winchester revised the review from his place of residence in Johnson County, Kansas. (Ex. A, ¶ 16).

13. Emily Winchester is a resident of Douglas County, Kansas. (Ex. B, ¶ 11).

14. Emily Winchester lives at Dancing Cow Farms, and provides services on the farm. (Ex. B, ¶ 12).

15. Dancing Cow Farms is a sole proprietorship owned by Randy Winchester. (Ex. A, ¶¶ 17-18).

16. Randy Winchester is a resident of Johnson County, Kansas. (Ex. A, ¶ 16).

17. Neither Emily nor Randy Winchester (individual or on behalf of Dancing Cow Farms) reside in Missouri or regularly transact business in Missouri. (Ex. A, ¶ 20; Ex. B, ¶ 15).

18. With the exception of a return phone call by Emily to Mr. Henley following repeated messages, neither Emily nor Randy Winchester ever telephoned Mr. Henley or otherwise contacted Mr. Henley or Bigfoot on the Strip through other agents or owners (with the exception of a response to a demand letter received from Plaintiff's attorneys herein). (Ex. A, ¶¶ 21-22; Ex. B, ¶¶ 16-17).

19. Neither Emily nor Randy Winchester have bank accounts or telephone listings in Missouri. (Ex. A, ¶ 23; Ex. B, ¶ 18).

20. Emily Winchester does not have an ownership interest in Dancing Cow Farms. (Ex. B, ¶¶ 13-14).

21. Plaintiff purportedly served Dancing Cow Farms with service, by leaving a copy of the summons and a copy of the petition at the "dwelling place or usual abode of Defendant/Respondent with Emily Winchester, a person of the Defendant's Respondent's family over the age of 15 years. (Return of Service as to Dancing Cow Farms filed in Taney County, Missouri, and attached to Notice of Removal, Doc. 1, as Ex. A).

22. Service was made at 36 East 2200 Road in Wellsville, Douglas County, Kansas. (Return of Service as to Dancing Cow Farms filed in Taney County, Missouri, and attached to Notice of Removal, Doc. 1, as Ex. A).

23. Plaintiff has not served Randy Winchester with process. (See Affidavit of Service providing no service made on Randy Winchester, attached hereto as Exhibit C).

### III. MOTION TO DISMISS AS TO "DANCING COW FARMS", WHICH IS NOT A LEGAL ENTITY, BECAUSE IT HAS NOT BEEN PROPERLY SERVED WITH PROCESS.

Dancing Cow Farms is not a legal entity, but a sole proprietorship of Randy Winchester. (SOF 15). Plaintiff has not served Randy Winchester with process. (SOF 23). A return of service of process

was filed by Plaintiff in the State Court Action, indicating service of process had been effectuated on "Dancing Cow Farms."

The law applicable to whether a party has the capacity to be sue or be sued is governed by Fed. R. Civ. P. 17(b). For individuals, capacity to be sued is determined by the law of the individual's domicile. Fed. R. Civ. P. 17(b)(1). For a corporation, by the law of the state where the corporation is organized. Fed. R. Civ. P. 17(b)(2). For all other parties, by the law of the state where the court is located.

Under both Kansas and Missouri law, Dancing Cow Farms – as a sole proprietorship – is not a legal entity with the capacity to be sued. *See Mason v. Sailormen, Inc.*, Case No. 4:11-CV-637 CAS, 2012 WL 1957413 at *3 (E.D. Mo. May 31, 2012) (citing *Bethel v. Sunlight Janitor Serv.*, 551 S.W.2d 616, 621 (Mo. banc 1977); *Crane Const. Co. v. Klaus Masonry*, 71 F.Supp.2d 1138 (D.Kan. 1999) (citing *Kansas Private Club Ass'n v. Londerholm*, 408 P.2d 891, 893, 196 Kan. 1, 3 (1995)). (The unpublished decision in *Mason* is attached hereto as Exhibit D). "By definition, a sole proprietorship has a single owner and is characterized by the complete identity of the business entity with the individual doing business." *Id*. (quoting *Morgan Wightman Supply Co. v. Smith*, 764 S.W.2d 485, 492 (Mo. Ct. App. 1989). "[W]hen a state's law does not consider a sole proprietorship to be a separate legal entity, a suit involving a sole proprietorship must name the owner as the party plaintiff or defendant, and not the sole proprietorship itself." *Mason*, 2012 WL 1957413 at *3 (relying on *Patterson v. v. & M Auto Body,* 589 N.E.2d 1306, 1308 (Ohio 1992); *Borah v. Monumental Life Ins. Co.,* 2005 WL 351040, at *2 (E.D.Pa. Feb. 14, 2005) (applying Pennsylvania law; dismissing claims against sole proprietorship as lacking capacity to be sued); *Burger v. Kuimelis,* 325 F.Supp.2d 1026, 1033 (N.D. Cal. June 28, 2004) (applying California law); *America Online Latino v. American Online, Inc.,* 250 F.Supp.2d 351, 353 n. 2 (S.D.N.Y.2003) (applying New York law); <u>*Cashco Oil Co. v. Moses,* 605 F.Supp. 70, 71 (N.D .Ill.1985)</u> (applying Illinois law; dismissing sole proprietorship as a defendant because it was not separately

suable). Because Dancing Cow Farms is not a legal entity, Dancing Cows must be served through its sole owner/proprietor, Randy Winchester. Plaintiff admitted via its own return of service filed in the State Court Action, Randy Winchester has not been served in this matter. (SOF 23). As such, the claims against Dancing Cow Farms should be dismissed pursuant to Fed. R. Civ. P. 12(b)(4) and/or 12(b)(5).

Defendants further contest this Court's personal jurisdiction over Dancing Cow Farms, as more fully enumerated on Section IV, below.

### IV. RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION – EMILY WINCHESTER AND DANCING COW FARMS

#### A. *Standard of Review*.

Pursuant to Rule 12(b)(2), a party is entitled to assert, by Motion, the defense for lack of personal jurisdiction. To survive a Motion to Dismiss, a plaintiff must make a prima facie showing that personal jurisdiction exists. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-592 (8th Cir. 2011) (quoting *Denver v. Hentzen Coatings, Inc.*, 380 F.3d 1070 (8th Cir. 2004)). While the evidentiary showing required at the prima facie stage is minimal, "the showing must be tested, not by pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." *Id*. While the evidence must be viewed in the "light most favorable to the plaintiff", the "burden of proof does not shift to the party challenging jurisdiction." *Id*. (citing *Fastpath, Inc., v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014)).

In Missouri, to obtain personal jurisdiction over a non-resident defendant, "the plaintiff must make a prima facie showing that (1) the cause of action arose out of an activity covered by Missouri's long-arm statute, ... and (2) the defendant had sufficient minimum contacts with Missouri to satisfy the requirements of due process." *Berry v. Berry (In re Marriage of Berry),* 155 S.W.3d 838, 840 (Mo.Ct.App.2005) (quoting *Wray v. Wray,* 73 S.W.3d 646, 649 (Mo.Ct.App.2002)).

B. *Missouri's Long Arm Statute*

The Missouri long-arm statute "authorizes personal jurisdiction over defendants, who, inter alia, transact business, make a contract, or commit a tort within the state." Mo. Rev. Stat. § 506.500.3. Within the specific categories enumerated for jurisdiction, the long-arm statute provides for jurisdiction "to the full extent permitted by the due process clause." *Id*. at 592 (quoting *State ex rel. Metal Serv. Ctr. Of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984)). Defendants do not contest that the cause of action arose out of an activity covered by Missouri's long arm statute for purposes of this motion, but rather dispute that the Defendants herein have sufficient minimum contacts with Missouri to satisfy the minimum requirements of due process.

C. *Constitutional Limits on Personal Jurisdiction*

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 477 (8th Cir. 2012) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). "A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant that has such minimum contacts with the forum 'that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

"[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*. (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "The exercise of jurisdiction satisfies due process when the defendant's contacts with the forum are such that it 'should reasonably anticipate being hailed into court there.'" *Id*. (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559).

"Personal jurisdiction exists only if the contacts between the defendant and the forum state are sufficient to establish that the defendant has purposefully availed himself of the benefits and protections of the forum state." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (quoting *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir.2006)). In *Aftanase v. Economy Baler Co.*, the Eight Circuit set out five factors courts must consider when determining whether there are sufficient minimum contacts to confer jurisdiction. 343 F.2d 187, 197 (8th Cir.1965). These factors remain the governing standard in the Eight Circuit, and include: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of Missouri in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *Johnson v. Arden,* 614 F.3d 785, 794, 797 (8th Cir. 2010) (citations omitted).

There are two types of personal jurisdiction: general and specific. *Johnson v. Arden*, 614 F.3d at 794 (quoting *Davis v. Baylor Univ.*, 976 S.W.2d , 12 (Mo Ct. App. 1998)). General jurisdiction exists as to a defendant who has "continuous and systematic" contacts with the forum state, and exists even where the injuries/damages at issue did not arise out of the defendant's contacts with that state. *Id.* (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004)). Conversely, specific jurisdiction exists where the defendant has purposefully directed its activities toward the forum state. *Id.* (citing *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir. 2003)). Specific jurisdiction only applies to suits arising out of or relating to the activities which give rise to jurisdiction. *Id.* (citations omitted).

    1. <u>General Jurisdiction</u>:

The State of Missouri does not have general personal jurisdiction over Emily Winchester or Dancing Cow Farms. "The Plaintiff's complaint is required to plead facts sufficient to support a reasonable inference that the defendant can be subjected to jurisdiction in [Missouri]." *Hanline v. Sinclair Global Brokerage Corp.*, 652 F.Supp. 1457, 1458-59 (W.D. Mo. 1987) (citing *Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 453 (8th Cir. 1984)).

Here, Plaintiff's Petition alleged that Emily Winchester is a resident of Wellsville, Franklin County, Kansas; and that Dancing Cow Farms is an entity with its principal place of business located in Wellsville, Franklin County, Kansas. The only connection with Missouri alleged in the Petition related to these defendants is that the torts at issue were "committed in Taney County, Missouri and business conducted in Taney County, Missouri." While these allegations may be sufficient to satisfy pleading requirements for specific personal jurisdiction, they do not support a reasonable inference that Emily Winchester or Dancing Cow Farms may be subject to general personal jurisdiction in the state of Missouri.

Further, the evidence now before the Court pursuant to this motion establishes that Emily Winchester and Dancing Cow Farms are not significantly connected to Missouri, and do not have continuous or systematic contacts with the state under the *Aftanase* factors. Emily Winchester visited Branson, Missouri as a tourist from May 2 to May 4, 2018. (SOF 1-4). She does not live in Missouri and does not regularly transact business in Missouri. (SOF17). Rather, she lives in Kansas, where she works on Dancing Cow Farms. (SOF 13-14). Dancing Cow Farms is a farm located in Kansas, owned and operated by Randy Winchester, also a Kansas resident. (SOF 13-16). Randy Winchester, owner and operator of Dancing Cow Farms, does not regularly transact business in Missouri. (SOF 15-17). Plaintiff has not alleged, nor do there exist, facts sufficient to support a finding of general jurisdiction. As discussed in detail below, dismissal is proper on jurisdictional grounds because this court also lacks specific jurisdiction over these defendants.

   2. *Specific Jurisdiction: Evaluating Due Process in Matters Involving Passive Internet Activity.*

Specific jurisdiction is only properly exercised over a non-resident defendant where the "injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposefully directed its activities at the forum state and the claim arose out of or relates to those activities." *Johnson v. Arden*, 614 F.3d at 795 (quoting *Steinbuch v Cutler*, 518 F.3d 580 (8th Cir.

2008)). While the Petition does not directly identify facts Plaintiff considered relevant to the Court's specific personal jurisdiction over Defendants herein, it is presumed that the Plaintiff will argue that because the claims alleged arose from the posting of a review of a Missouri entity, making the post constituted purposeful direction of Defendants' activities toward Missouri. That post, however, is insufficient to establish the minimum contacts required by Due Process, and is insufficient to establish specific jurisdiction over the Defendants herein.

When considering specific jurisdiction in the context of internet contacts, the Eight Circuit considers the *Zippo* test instructive. *Johnson v. Arden*, 614 F.3d at 796 (citing L*akin v. Prudential Sec. Inc.*, 384 F.3d 704, 710-11 (8th Cir. 2003)). The *Zippo* test is a sliding scale, created to measure the likelihood of personal jurisdiction. *Id*. (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 119, 1124 (W.D. Pa. 1997)). "That scale runs from active contract formation and repeated transmission of computer files to mere posting of information on a website." *Id*. In this case, the conduct at issue is limited, without dispute, to <u>mere posting</u>, and as such, is insufficient in and of itself to establish personal jurisdiction.

Plaintiff may attempt to rely on the *Calder* effects test to argue jurisdiction has been satisfied herein. Such reliance would be misplaced. Under the *Calder* effects test established by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 (1984), specific personal jurisdiction may be satisfied where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered – and which the defendant knew was likely to be suffered in the forum state. *Id*. (quoting *Lindgren v. GDT*, 312 F.Supp.2d 1125, 1132 (S.D. Iowa 2004)). Stated differently, the *Calder* effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." *Id*. (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390-91 (8th Cir. 1991)). Notably, the

Eighth Circuit construes the *Calder* test narrowly, and considers the *Calder* test as but one additional factor in determining the question of specific jurisdiction in cases where intentional torts are alleged. *Id*. at 796-797 (citing *Dakota*, 946 F.2d at 1391). Specifically, the rule in the Eight Circuit is that "absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction. *Id*. at 797 (citing *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (per curiam)).

The United States Supreme Court echoed that rule in 2014, when it addressed the *Calder* effects test in *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115, 1125, 188 L.Ed.2d 12 (2014). In that case, the Supreme Court discussed specific jurisdiction over a non-resident defendant whose relationship with the forum state was limited to the fact that the Plaintiff's sustained an injury in the forum state:

> Applying the foregoing principles, we conclude that petitioner lacks the "minimal contacts" with Nevada that are a prerequisite to the exercise of jurisdiction over him. *Hanson [v. Denckla],* 357 U.S. [235], at 251, 78 S.Ct. 1228 [(1958)]. **It is undisputed that no part of petitioner's course of conduct occurred in Nevada**….
>
> The Court of Appeals reached a contrary conclusion by shifting the analytical focus from petitioner's contacts with the forum to his contacts with respondents. See *Rush,* 444 U.S., at 332, 100 S.Ct. 571. **Rather than assessing petitioner's own contacts with Nevada, the Court of Appeals looked to petitioner's knowledge of respondents' "strong forum connections."** 688 F.3d, at 577–579, 581. In the court's view, that knowledge, combined with its conclusion that respondents suffered foreseeable harm in Nevada, satisfied the "minimum contacts" inquiry.[8] *Id.,* at 582.
>
> This approach to the "minimum contacts" analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis. Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis. See *Rush, supra,* at 332, 100 S.Ct. 571. It also obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself.
>
> Relying on *Calder,* respondents emphasize that they suffered the "injury" caused by petitioner's allegedly tortious conduct (*i.e.,* the delayed return of their gambling funds) while they were residing in the forum. Brief for Respondents 14. This emphasis is likewise misplaced. <u>As previously noted, *Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum</u>. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that

the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*Id*. at 1124–25, 188 L. Ed. 2d 12 (2014) (emphasis added).

In this case, the post at issue was a review of a Missouri business operating in Missouri. The reviews do not reference "Missouri" specifically, but refer only to the Bigfoot Safari tour. This is the sole contact with the state of Missouri connected with the allegedly tortious conduct, i.e., the posting of defamatory statements on the internet. While in this case, Emily and Randy Winchester did travel to the state of Missouri as tourists, the post at issue was drafted and posted from Kansas after the Winchesters returned from their trip; and later revised in Kansas following Plaintiff's subsequent efforts to contact the Defendants after they returned to Kansas.

The *Johnson* case is instructive in this analysis. In that case, the plaintiffs' (the Johnsons) claims arose out of alleged defamatory statements posted on an internet discussion board. *Johnson v. Ard*en, 614 F.3d at 787-88. The Johnsons resided in Missouri, where they owned and operated an exotic cat breeding business. *Id*. They advertise their business on the internet, and have operate a website connected with the business. *Id*. The Johnsons alleged defendants, including Kathleen Heineman, posted alleged defamatory statements about the Johnson's business on the interactive website, www.Complaints Board.com. *Id*. Specifically, the Johnsons alleged statements on the website included statements that the Johnson skill cats, the Johnsons "rip off" cat breeders, that the Johnsons steal kittens, that the Johnson cats were infected and that the Johnsons were con artists. *Id*.

Kathleen Heineman resided in Colorado. *Id*. She did not maintain offices in Missouri, own property in Missouri, or pay taxes in Missouri. *Id*. She did not own any domain name registrations and does not operate any websites. *Id*. The Johnsons argued that Heineman sells cats throughout the United Sates, including sales in the state of Missouri. *Id*. Heineman had a limited, prior business relationship with the Johnsons, intermittently providing administrative and other miscellaneous services. *Id*. The

Johnsons alleged that from 2002 to 2006, Heineman purchased 16 cats for the Johnsons from breeders throughout the United States. *Id*. Some of the cats were shipped to Colorado and then eventually shipped from Colorado to Missouri. *Id*. Heineman twice delivered cats to the Johnsons in Missouri. *Id*. The Johnsons also shipped seven cats to Heineman in Colorado. *Id.* at 789. Heineman purchased advertising space from the Johnson's to advertise about 50 cats for sale on their website and the website listed Heineman's email address as the contact person for interested parties as to those cats. Heineman did not place any cats in Missouri or do business in Missouri.

Considering jurisdiction as to Heineman in Missouri, the Court first considered general jurisdiction. It held that Heineman's infrequent trips to Missouri to deliver cats and other Missouri contacts were insufficient to confer general jurisdiction. *Id*. at 795.

The Eight Circuit then considered whether the fact that Heineman allegedly undertook to post defamatory statements on [www.ComplaintsBoard.com](www.ComplaintsBoard.com) was sufficient to confer specific personal jurisdiction. After discussing its position, articulated above, related to application of the *Calder* effects test, the Eight Circuit reviewed several arguments made by the Johnsons in favor of jurisdiction.

First, it considered that Johnsons position that Heineman aimed her conduct at Missouri by virtue of the fact that the Complaints Board post at issue stated that the Johnsons operated from Unionville, Missouri where they killed and tortured cats, sold infected cats, and operated a kitten mill; finding that the allegation, even if accepted a true, "fail[ed] to show that Heineman uniquely or expressly aimed her statements at Missouri." Id. at 796. According to the Court, the statements were aimed at the Johnsons, not the state of Missouri, and that the inclusion of "Missouri" was incidental and "'not performed for the purpose of having their consequences' felt in Missouri." *Id*. There was no evidence the Complaints Board website specifically targeted Missouri or that the content of the post specifically targeted Missouri. *Id*.

Second, the Eight Circuit addressed the argument that because the effect of the alleged statement was felt in Missouri by Missouri plaintiffs, specific personal jurisdiction existed. Noting its narrow construction of Calder and prior holdings that <u>mere effects in the forum state are insufficient to confer jurisdiction</u>, the Eight Circuit held: "Posting on the internet from Colorado an allegedly defamatory statement including the name "Missouri" in a factual assertion does not crate the type of substantial connection between Heineman and Missouri necessary to confer specific personal jurisdiction." Id. at 796-97.

In this case, the fact that the Plaintiff felt the effects of the alleged defamatory post in Missouri is insufficient to confer specific personal jurisdiction. Emily Winchester's contact with Missouri is even more tenuous than the contact had by Heineman with the Johnsons (i.e., consisting of a single visit to Missouri as a tourist), and cannot serve as a basis for the assertion of personal jurisdiction over her. Dancing Cows Farms has absolutely no documented contact with Missouri other than the post, nor is such contact alleged.

For these reasons, this court lacks specific personal jurisdiction over defendants Emily Winchester and Dancing Cow Farms, and because there are also insufficient contacts to establish general jurisdiction, the claims against them should be dismissed.

## V.  CONCLUSION

The claims against Dancing Cow Farms should be dismissed with prejudice, as it is not a legal entity subject to suit in this state or in the state of Kansas where it is located. Further, to the extent the Court cannot make that determination at this time, Dancing Cow Farms has not been properly served herein, and as such Dancing Cow Farms should be dismissed pursuant to Fed. R. 12(b)(4) and (5).

Moreover, this Court, sitting in the state of Missouri, does not have personal jurisdiction over these Defendants, in that they lack the minimum contacts with the state of Missouri necessary to satisfy

2737288.1

Page 15 of 16
Case 6:18-cv-03155-BP   Document 8   Filed 05/22/18   Page 15 of 16

the Due Process clause of the United States Constitution. For this reason, the claims against these defendants should be dismissed.

Respectfully submitted,

HINKLE LAW FIRM LLC
6800 College Boulevard, Suite 600
Overland Park, Kansas 66211
913-345-9205/ FAX: 913-345-4832


By: /s/ Jennifer R. Johnson
    Jennifer R. Johnson, jjohnson@hinklaw.com    #59197

ATTORNEYS FOR DEFENDANTS

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 22nd day of May, 2018, the foregoing *Memorandum in Support of Motion to Dismiss* was filed electronically with the Clerk of the District Court of Johnson County, KS; and a service copy was served electronically via email only on the following:

Bryan D. Fisher, #65904 (bfisher@nnlaw.com)
NEALE & NEWMAN, LLP
1949 E. Sunshine, Suite 1-130
Springfield, MO 65808-0327
417-882-9090 / Fax: 417-882-2529
*Attorneys for Plaintiff*

                                       /s/ Jennifer R. Johnson
                                       ATTORNEYS FOR DEFENDANTS