# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| **BIGFOOT ON THE STRIP, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 6:18-CV-03155 |
| | ) |
| **RANDY WINCHESTER,** | ) |
| **EMILY WINCHESTER,** | ) |
| **DANCING COW FARMS** | ) |
| | ) |
| **Defendants.** | ) |

### PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT EMILY WINCHESTER AND DANCING COW FARMS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, AND FOR IMPROPER SERVICE OF PROCESS AS TO DANCING COW FARMS

**COMES NOW** Plaintiff Bigfoot On The Strip, LLC, by and through its attorneys, and for its Suggestions in Opposition to Defendant Emily Winchester and Dancing Cow Farms' Motion to Dismiss for Lack of Personal Jurisdiction, and for Improper Service of Process as to Dancing Cow Farms ("Defendants' Motion to Dismiss"), hereby states as follows:

### INTRODUCTION

Defendants filed their Motion to Dismiss (the "Motion") on May 22, 2018. (Doc. 7). On June 13, 2018, Plaintiff filed its Motion to Remand because the current dispute fails to meet the statutory requirements for diversity jurisdiction, thus depriving this Court of subject-matter jurisdiction. (Doc. 16). The Motion to Remand raises serious concerns about the appropriateness of any ruling by this Court on Defendant's Motion to Dismiss because if this Court lacks subject-matter jurisdiction over the present controversy, then the merits of Defendants' arguments about personal jurisdiction should be determined by the state court in which the instant case was filed.

On June 15, 2018, Plaintiff filed its Motion for Jurisdictional Discovery as to the Issue of Personal Jurisdiction and Motion for Extension of Time to Respond to Defendants' Motion to Dismiss. (Doc. 17). No ruling on Plaintiff's motion for discovery and an extension has yet issued. Plaintiff thus files these Suggestions, objecting to the Court that Plaintiff's rights are greatly prejudiced by the requirement that it respond, without the opportunity to conduct jurisdictional discovery, to the allegations and arguments proffered by Defendants in their Motion, which are supported only by their own, self-serving affidavits, and which go well beyond the facts pleaded in this case. As Plaintiff's motion for discovery and an extension sets forth, Plaintiff is entitled to conduct such discovery and should be afforded the opportunity to do so before a ruling on Defendants' Motion. *See* (Doc. 17).

## ARGUMENT

"The exercise of jurisdiction is favored **_where the plaintiff has made a threshold showing of minimum contacts_** at the first stage of the inquiry. *Mason v. Mooney Aircraft Corp.*, 2003 WL 21244160, at *9 (W.D. Mo. May 8, 2003) (emphasis added). Specific jurisdiction exists when a plaintiff's claims arise out of a defendant's activities and contacts with a forum state. *Angelica Corp. v. Gallery Mfg. Corp.*, 904 F. Supp. 993, 997 (E.D. Mo. 1995) (citing *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991). Where a defendant purposefully establishes contacts (i.e. deliberately engages in activities in the forum state), the defendant has minimum contacts for the exercise of jurisdiction. *Minnesota Min. & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995). And where the controversy arises from the defendant's contacts with the forum state, an essential foundation for personal jurisdiction is established. *Id.*

Defendants predicate their Motion on the argument that passive internet activity is

insufficient to establish specific jurisdiction. This Court need not decide that issue because Defendants' "passive internet activity" is not why courts in Missouri may exercise jurisdiction over Defendants. Rather, it is Defendants' continuous contacts with Missouri, including, the contacts that give rise to the current controversy, that establish the jurisdiction of Missouri courts.

To support their claim that Missouri courts lack jurisdiction over them, Defendants make numerous averments to the Court. *See generally* (Doc. 8, Memo. in Supp. of Mot. to Dismiss). These averments go far beyond the face of the pleadings in this case, and thus, as noted by Plaintiff in these Suggestions and in its previous motions, Plaintiff is unfairly prejudiced in responding to them without the opportunity to conduct jurisdictional discovery. The averments are also supported only by the Defendants' self-serving affidavits. *Id.* Notably, however, ***Defendants' affidavits establish their minimum contacts with Missouri***.

Defendants admit that they traveled to Missouri on March 2, 2018 (Affidavit of Randy Winchester, attached hereto as Ex. A, ¶ 2; Affidavit of Emily Winchester, attached hereto as Ex. B, ¶ 2). Defendants admit that they conducted business in Missouri with Plaintiff (Ex. A, ¶ 3; Ex. B, ¶ 3). Defendants admit that they traveled to Missouri on March 2, 2018 for the annual membership meeting of the Heartland Highland Cattle Association, a Missouri based organization (Ex. A, ¶ 2; Ex. B, ¶ 2; Certification of Incorporation, attached hereto as Ex. C). Defendants also admit that their tortious conduct subjects them to jurisdiction pursuant to Missouri's long-arm statute. (Doc. 8, Memo. in Supp. of Mot. to Dismiss, p. 8, § B).

Absent any one of the contacts above, Defendants would have had no contact with Missouri from which a claim by Plaintiff could have arisen. Those contacts thus establish that Defendants purposefully established contacts with Missouri and their contacts are the contacts

from which Plaintiff's claims arise. For example, if Defendants had not been members of the Heartland Highland Cattle Association, a ***Missouri*** organization, they would not have been traveling to Missouri for its annual meeting. Likewise, had Defendants not been members of the Heartland Highland Cattle Association, again a ***Missouri*** organization, they would not have been invited to the special event Plaintiff, a ***Missouri*** business, hosted for the association's members at its business in ***Missouri***. Also, had Defendants not paid Plaintiff and thereby conducted business with Plaintiff, again a ***Missouri*** business, Defendants would not have been able to attend the event hosted by Plaintiff at its business in ***Missouri***. And, of course, without the foregoing contacts, there would have been no defaming review of Plaintiff's ***Missouri*** business. Defendants thus establish with their own admissions, that they have sufficient minimum contacts with Missouri, and that those contacts are the contacts from which Plaintiff's claims arise. Defendants are thus subject to the jurisdiction of courts in Missouri.

Additionally, Defendants own and operate a farm in Wellsville, Kansas called Dancing Cow Farms (Ex. A, ¶ 17, 18; Ex. B, ¶ 12, 13), which is ***approximately 30 miles from the Kansas-Missouri border***. That farm advertises that it sells livestock in its "surrounding area." *See* (About Us Web-Page of Dancing Cow Farms Website, attached hereto as Ex. D). Defendants also advertise the cattle from their farm on the website of the Heartland Highland Cattle Association, a Missouri non-profit corporation. (Classifieds Web-Page of the Heartland Highland Cattle Association Website attached hereto as Exhibit E, pp. 25/53–26/53; Ex. C). That website lists the cost to publish an ad on the site, which means Defendants have presumably paid for their classified ad and have thus conducted additional business in Missouri. (Ex. E, p. 1/53). It thus strains credulity to imagine that Defendant's business is confined to Kansas alone and provides an inference that Defendants have minimum contacts with Missouri—a

4

presumption that Defendants should not be able to overcome with their self-serving affidavits and when Plaintiff has not yet been granted an opportunity to conduct jurisdictional discovery.[1]

Although the facts above establish that Missouri courts have jurisdiction over the Defendants, Plaintiff notes that Defendants urge this Court that *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2006) supports their Motion. The facts in *Arden*, however, are not the same as the facts here. *Arden* is thus distinguishable, unavailing to Defendants, and supports the conclusion that Defendants are subject to the jurisdiction of Missouri courts.

First, unlike Defendants, the defendant in *Arden* did not operate her business thirty miles from the Missouri border. *See Arden*, 614 F.3d at 787–89. Second, unlike Defendants, the defendant was not a member of a Missouri organization. *Id.* Third, the defendant did not travel to Missouri to attend the annual meeting of a Missouri organization of which she was a member. *Id.* Fourth, the defendant's business transaction with the Plaintiff was not a part of the contact that gave rise to the plaintiff's claims. *Id.* Fifth, the defendant did not conduct business with parties in Missouri other than the plaintiff. *Id.* Sixth, the defendant did not operate a website, let alone a website for a business that operated thirty miles from the Missouri border and which advertised that it did business in the surrounding area. *Id.* Seventh, the defendant posted the allegedly defaming comments on a general on-line message board, ***not on a profile of the Missouri plaintiff's business***. *Id.* Eighth, the defendant posted the allegedly defaming comments on a general on-line message board, ***not on a profile that exists solely for the purpose of advising potential customers about that business***. *Id.*

The last two facts above are perhaps the most notable because in *Arden* the court found

---

[1] Defendants have also furthered their contacts with Missouri by granting interviews to the Springfield News-Leader in Springfield, Missouri, to discuss Plaintiff and this litigation and presumably in order to have their statements about the litigation published in Missouri.

that even if the defendant had posted the content at issue, there was no evidence that the defendant "uniquely or expressly aimed her statements at Missouri" or that the statements were made "for the very purpose of having their consequences felt in Missouri." *Arden*, 614 F. 3d at 796 (internal quotation marks omitted). Here, there is no dispute that Defendants posted their defaming review on the TripAdvisor website, and not on a general message board. There is also no dispute that the tortious comments were posted on a profile of Plaintiff's business on that website, not in a forum unrelated to a Missouri business.

Moreover, unlike a general message board, the TripAdvisor website's purpose is to "provide[ ] travelers with the wisdom of the crowds ***to help them decide where to stay, how to fly, what to do and where to eat***." (About TripAdvisor Web-Page of the TripAdvisor Website attached hereto as Ex. F). And also unlike the message board in *Arden*, here Defendant's published their tortious statements on a profile of Plaintiff's business that listed its name, its address, its phone number, a map of its location, a link to Plaintiff's website, an email at which to contact Plaintiff, and a description of Plaintiff business with pictures of that business. (Bigfoot Web-Page of the TripAdvisor Website attached hereto as Ex. G). The profile is also maintained under the categories "Missouri" and "Branson" and "Branson – Things To Do." (Ex. G).

Thus, when Defendants published their defaming comments on Plaintiff's TripAdvisor profile, unlike the defendant in *Arden*, Defendants uniquely and expressly aimed their statements at Plaintiff's business in Missouri and Missouri. The statements were made with the purpose and intent that they be felt in Missouri because they were directed to individuals in Missouri or traveling to Missouri that were or could be Plaintiff's customers and to Plaintiff. To the extent Defendants attempt to rely on *Arden*, the reliance is misplaced. If anything*, Arden* supports the

proposition that Missouri courts have jurisdiction over Plaintiff.

As final matter, Defendants state Dancing Cow Farms is a sole proprietorship and thus cannot be served or sued. (Doc. 8, Memo. in Supp. of Mot. to Dismiss, pp. 5-7). Plaintiff cannot adequately respond to this allegation and its potential consequences in this suit because it has not yet been afforded the opportunity to conduct jurisdictional discovery. Plaintiff thus again urges the Court to delay any ruling on Defendants' Motion until Plaintiff has been afforded the opportunity for appropriate discovery and the opportunity to file supplemental suggestions in opposition.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied, or alternatively, as requested in Plaintiff's Motion for Jurisdictional Discovery as to the Issue of Personal Jurisdiction and Motion for Extension of Time to Respond to Defendants' Motion to Dismiss and also in these Suggestions by reference, ruling on Defendant's Motion should be passed until such time as Plaintiff has been afforded an opportunity to conduct jurisdictional discovery and to file supplement suggestions in opposition.

Respectfully submitted,

NEALE & NEWMAN, L.L.P.

By: /s/ Bryan D. Fisher
    Bryan D. Fisher, #65904

1949 E. Sunshine, Ste. 1-130
P.O. Box 10327
Springfield, MO 65808-0327
Telephone:   (417) 882-9090
Facsimile:   (417) 882-2529
Email:   bfisher@nnlaw.com

***ATTORNEYS FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically to those parties who have entered an appearance in the Court's Electronic Court Filing (ECF) System and conventionally, via first-class mail, postage prepaid, to those parties who have requested notice but are not participating in the ECF System, on this 22nd day of June, 2018.

**NEALE & NEWMAN, L.L.P.**

By: /s/ Bryan D. Fisher
    Bryan D. Fisher, #65904