IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BIGFOOT ON THE STRIP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-3155-CV-S-BP |
| | ) | |
| RANDY WINCHESTER; | ) | |
| EMILY WINCHESTER; and | ) | |
| DANCING COW FARMS | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND OPINION (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND (2) DENYING PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY**

Plaintiff Bigfoot on the Strip, LLC filed suit against Randy Winchester, ("Randy"), Emily Winchester, ("Emily"), and Dancing Cow Farms, asserting claims for libel and other torts based on posts Defendants allegedly made on the internet. Dancing Cow Farms contends that it should be dismissed because it has not been properly served, and both Dancing Cow Farms and Emily assert that they are not subject to personal jurisdiction.[1] Plaintiff opposes dismissal, and also asks for leave to conduct jurisdictional discovery. As discussed below, the Motion to Dismiss, (Doc. 7), is **GRANTED** in part and **DENIED** in part, and Dancing Cow Farms is dismissed. Plaintiff's motion for leave to conduct jurisdictional discovery, (Doc. 17), is **DENIED**.

**I. BACKGROUND**

According to the Petition filed in state court (which the Court hereafter refers to as the Complaint), Plaintiff conducts an event or tour called the Bigfoot Discovery Expedition Tour/Bigfoot Safari Tour, ("the Tour") in Branson, Missouri. (Doc. 1-1, ¶ 7.) Randy and Emily

---
[1] Randy is not a party to the Motion to Dismiss. (*See* Doc. 8, p. 1.)

visited the Tour in early 2018. (Doc. 1-1, ¶ 6.) Sometime thereafter, Defendants allegedly posted reviews of the Tour on TripAdvisor. (Doc. 1-1, ¶¶ 6-7.)

TripAdvisor is a website with travel information about various attractions and tourist destinations. The website consists of separate pages for each attraction listed, and members of the public can obtain reviews for an attraction by looking at its individual TripAdvisor page. The ability to post reviews on TripAdvisor is also open to the public. Plaintiff's claims are based on their allegation that the reviews Defendants posted on Plaintiff's TripAdvisor page contain false and defamatory information. (Doc. 1-1, ¶¶ 7-9.) The details of these allegations need not be set forth at this time.[2]

Counts I and II assert claims for libel and negligence, respectively. Count III is a request for punitive damages, Count IV asserts a claim for tortious interference with business expectancy, and Count V seeks injunctive relief. Dancing Cow Farms seeks dismissal because (1) it is not a legal entity capable of being sued, and therefore has not been properly served, and (2) it is not subject to personal jurisdiction. Emily also contends that she is not subject to personal jurisdiction in Missouri. Plaintiff opposes the motion, and also seeks an opportunity to conduct discovery on these issues. As discussed below, the Court concludes that (1) there is no need to permit Plaintiff to conduct discovery, (2) Dancing Cow Farms should be dismissed, and (3) Emily should not be dismissed.

---

[2] The reviews have been described but are not attached to any pleadings filed in this case. However, they were attached as exhibits to the Petition filed in state court and thus should have been included when Defendants filed their Notice of Removal. *See* 28 U.S.C. § 1446(a). The Court thus considers them to be part of the pleadings in the case.

## II. DISCUSSION

### A. Dancing Cow Farms

Defendants contend that Dancing Cow Farms is a sole proprietorship that is owned and operated by Randy, so it is not a legal entity capable of being sued and the purported service of process on Dancing Cow Farms is ineffective. The Court concludes that Dancing Cow Farms lacks the capacity to be sued, making it unnecessary to address the issue of service.

The ability to sue a sole proprietorship in its own name is determined by Rule 17(b)(3), which states that the ability to sue parties other than individuals and corporations is determined by the state where the court is located.[3] Under Missouri law, sole proprietorships have no independent existence. "[A] sole proprietorship has a single owner and is characterized by the complete identity of the business entity with the individual doing business." *Morgan Wightman Supply Co. v. Smith,* 764 S.W.2d 485, 492 (Mo. Ct. App. 1989) (quotation omitted); *see also Bethel v. Sunlight Janitor Serv.,* 551 S.W.2d 616, 621 (Mo. 1977) (en banc). Therefore, Dancing Cow Farms has no independent existence separate and apart from Randy, so it is not an entity capable of being sued in its own name. Plaintiff can sue Randy, but it cannot sue "Dancing Cow Farms" because it is not an independent entity.

Plaintiff does not dispute these legal propositions; instead, it seeks an opportunity to conduct discovery to determine if Dancing Cow Farms is really a corporation. However, Plaintiff does not explain what discovery it wishes to conduct on this issue. More importantly, discovery is not necessary because the issue is resolved by examining the Kansas or Missouri Secretary of State's records. Defendants attached exhibits demonstrating that Dancing Cow Farms is not a

---

[3] Rule 17(b)(3)(A) is an exception to this rule, but it does not apply in this case because Dancing Cow Farms did not file this lawsuit seeking to enforce a federal right.

registered business entity in either Kansas or Missouri. (Doc. 21-1; Doc. 21-2.) The Court has independently examined the Kansas and Missouri websites and takes judicial notice of the fact that, per the Kansas and Missouri Secretary of State's websites, Dancing Cow Farms is not a legal entity in either state.[4] That being the case, there is no need to permit discovery on this issue.

Dancing Cow Farms is a sole proprietorship; it is not a corporation or other entity possessing independent existence. Therefore, it cannot be sued in its own name, and it must be dismissed.

### B.  Emily Winchester

Emily argues that she is not subject to personal jurisdiction in Missouri. "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists" and must "make a prima facie showing of personal jurisdiction over the challenging defendant." *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). "While the plaintiff[ ] bear[s] the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). As discussed below, the Court concludes that the Complaint alleges a prima facie case of jurisdiction, so (1) there is no need for Plaintiff to conduct discovery and (2) Emily's request to be dismissed is denied.[5]

---

[4] The Court visited the websites https://www.kansas.gov/bess and https://www.sos.mo.gov/business/corporations, and takes judicial notice that as of July 12, 2018 Dancing Cow Farms is not listed as ever having been a business entity in Kansas or Missouri.

[5] Emily opposes Plaintiff's request to conduct discovery, yet she also insists that the Court should consider the affidavits submitted by her and Randy. As a matter of fairness, the Court cannot consider Defendants' affidavits while denying Plaintiff the opportunity to conduct discovery on the issues raised in the affidavits. However, in this case there is no need to consider the affidavits (or permit discovery on the issues raised therein) because the issue of personal jurisdiction can be resolved based on the Complaint. Moreover, to the extent that Emily contends that she is not subject to personal jurisdiction in Missouri because she did not post the reviews on TripAdvisor (and thus did not commit a tortious act), the Court concludes that it is not appropriate to resolve the merits when considering the issue of personal jurisdiction.

"When assessing whether personal jurisdiction exists over a nonresident defendant, jurisdiction must be authorized by Missouri's long arm statute and the defendant must have sufficient minimum contacts with the forum state to satisfy due process." *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 911 (8th Cir. 2014). Under Missouri law these are distinct inquiries. *Myers v. Casino Queen, Inc.,* 689 F.3d 904, 909-10 (8th Cir. 2012). However, Emily has not argued that the long arm statute has not been satisfied, and the Court independently concludes that the long arm statute has been satisfied because Emily allegedly committed a tortious act in Missouri. Mo. Rev. Stat. § 506.500.1(3). Therefore, the Court proceeds to consider whether exercising jurisdiction over Emily comports with the Due Process Clause.

The Court must consider five factors to determine whether Emily's contacts with Missouri are sufficient to permit it to exercise jurisdiction over her. "The five factors are: 1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties. We give significant weight to the first three factors." *Fastpath*, 760 F.3d at 821 (internal citation omitted).

The facts alleged in the Complaint demonstrate that the balance of these five factors favors a finding of personal jurisdiction over Emily. She is alleged to not only have visited the Tour in Branson, but she allegedly made defamatory statements about the Tour and directed them in a manner that allowed the effects of her tortious conduct to be felt solely by Plaintiff, and solely in Missouri. This implicates the "effects" test established in *Calder v. Jones*, 465 U.S. 783 (1984). In that case, the Supreme Court held that defendants who published a libelous newspaper article about an individual known to be living in California could be sued in California. The Court explained that due process was satisfied because the petitioners'

> intentional, and allegedly tortious, actions were expressly aimed at California. [The petitioners published] an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation. Under the circumstances, petitioners must reasonably anticipate being haled into court there to answer for the truth of the statements made in their article. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

*Calder*, 465 U.S. at 789-90. The Eighth Circuit has described *Calder*'s "'effects' test" as requiring a plaintiff to "make[ ] a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered - and which the defendant knew was likely to be suffered - in the forum state." *Johnson v. Arden,* 614 F.3d 785, 796 (8th Cir. 2010) (quotations omitted).

The Complaint's allegations satisfy these requirements. The reviews posted on TripAdvisor were intentionally aimed at Missouri because they were posted on Plaintiff's page on TripAdvisor and were intended to be a review of the services provided by Plaintiff at its sole business location in Missouri. Defendants knew that any harm from their false statements would be suffered in Missouri, because they knew that their statements involved an attraction located only in Missouri and because their personal visit to Missouri provided them with information they could use to create their falsehoods. They also knew that potential visitors consulting TripAdvisor about the Tour would look at the page devoted exclusively to the Tour. Therefore, these intentional statements were "uniquely or expressly aimed" at Missouri, and as such they are sufficient for the court to establish personal jurisdiction over Emily.

Emily relies on *Johnson* to argue that posting defamatory statements on the internet is insufficient to satisfy *Calder*'s effects test. It is true that *Johnson* held that personal jurisdiction was lacking in that case, but the internet posting in *Johnson* is distinguishable from the postings at

6

issue in this case. In *Johnson*, the defendants allegedly posted defamatory comments about a Missouri business on the website www.ComplaintsBoard.com, which did not have individualized pages for the businesses and other targets of the "complaints." The Court of Appeals observed that there was "no evidence that the www.ComplaintsBoard.com website specifically targets Missouri, or that the contents of [the] alleged postings specifically targeted Missouri." *Johnson,* 614 F.3d at 796. In contrast, the defamatory comments alleged in this case were posted on a webpage devoted solely to reviews for Plaintiff and its only business location in Missouri, so Plaintiff's page on TripAdvisor is much more specific and targeted than the general message board on which the comments were posted in *Johnson*.

Emily also argues that the effects test is not a substitute for the traditional due process analysis, and this is correct. "[W]e have used the *Calder* test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state," and there must be some additional contact by the defendant with the forum state. *Id.* at 796-97. In *Johnson* there were no additional contacts; here, however, Emily is alleged to have traveled to Missouri and visited the Tour. The fact that Emily allegedly traveled to Missouri, visited the Tour, and then posted defamatory comments about the Tour on a webpage devoted to the Tour's owner and operator differentiates this case from *Johnson* and permits consideration of the reasonably anticipated effects of Emily's intentional conduct. Thus, the nature and quality of Emily's contacts and conduct with respect to Missouri, and the fact that Plaintiff's claims arise from those contacts, favors a finding of personal jurisdiction.

The two remaining factors also favor a finding that Plaintiff has presented a prima facie case for exercising jurisdiction over Emily. Missouri has an interest in providing a forum for Plaintiff to seek redress, particularly given that Plaintiff operates only in Missouri. Moreover, the

Court discerns no inconvenience to Emily, given that she lives approximately three hours away from the courthouse in Springfield, Missouri. This latter point is particularly important: the Court's conclusion might be different if Emily lived a significant distance away from Missouri. However, the pleadings establish that she lives in Douglas County, Kansas, which is approximately three hours from the federal courthouse in Springfield, Missouri, so Emily is not significantly burdened by being required to defend this suit.

Jurisdiction does not need to be established by a preponderance of the evidence at this point in the proceedings. Based on the Complaint's allegations, the balance of factors causes the Court to conclude that Plaintiff has established a prima facie case for personal jurisdiction over Emily.

### III. CONCLUSION

The Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, and the Motion to Conduct Discovery is **DENIED**. Dancing Cow Farms is not an entity capable of being sued, so it is dismissed. However, Plaintiff has alleged sufficient facts demonstrating that Emily Winchester is subject to jurisdiction in this Court, so her request to be dismissed is denied.

**IT IS SO ORDERED.**

Date: August 2, 2018

/s/ Beth Phillips  
BETH PHILLIPS, JUDGE  
UNITED STATES DISTRICT COURT