IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| BIGFOOT ON THE STRIP, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 18-3155-CV-S-BP |
| ) | |
| RANDY WINCHESTER and ) | |
| EMILY WINCHESTER, ) | |
| ) | |
| Defendants. ) | |

## ORDER AND OPINION GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff initiated this suit in state court, and in its Amended Complaint alleges that Defendants published false and defamatory statements on two websites and in an interview with a newspaper reporter. It asserts claims for libel, negligence, and tortious interference with business expectancy. Defendant Emily Winchester asserted a counterclaim for abuse of process. Pending is Plaintiff's Motion for Summary Judgment on the counterclaim, (Doc. 141), which is **GRANTED.**

## I. BACKGROUND

The Court will set forth material facts that are uncontroverted or, where controverted, in the light most favorable to Defendant. The Court will not set forth immaterial facts. Citations to the Record will not be provided for facts agreed to by the parties. Citations also will not be supplied where only an inconsequential component of a fact has been controverted, or where the "objection" really constitutes argument about the legal significance of the fact.

Plaintiff operates a Bigfoot-themed tourist attraction in Branson, Missouri, and one of the attractions available to customers is a tour. One of Plaintiff's managing members, Darrell Henley,

is also a member of the Heartland Highland Cattle Association, ("HHCA"), an educational association that promotes and educates the public about Highland cattle. The HHCA held its annual meeting in Branson in March 2018, and in connection with that meeting Plaintiff provided an opportunity for HHCA members to go on a tour (during which the HHCA members would have an opportunity to see Plaintiff's cows). Defendants Randy and Emily Winchester – who operate a farm in Wellsville, Kansas and are also members of the HHCA – went on the tour. Thereafter, one or both of them posted the following review on Plaintiff's page on the internet review site TripAdvisor.com:

> We did the Bigfoot Safari tour as part of a large group. The $10 price tag is about right for what we got. Basically a tour through some pretty rugged country on some pretty narrow roads. They promote the fact they have the largest herd of Highland cows in the Midwest. You spend about 5-10 minutes feeding them range cubes at the beginning of the tour, and see maybe 10 of the cows. Then its off into the hills you go with a guide telling some pretty fanciful tales along the way. All in all a decent experience but had we paid more than the $10 I would have been disappointed.

On a scale of one to five, the review rated the experience a three. The review indicates that it was made by "randy w."

Henley investigated to determine who left the review, primarily by reviewing HHCA's membership list for a person with the name of Randy and a last name that began with the letter "W;" in this way, Henley found the HHCA listing for "Randy or Emily Winchester" of "Dancing Cow Farms" in Wellsville, Kansas. A phone number and a website were included in the listing. Henley went to the Dancing Cow Farms website and found a phone number (which is the same as the number in the HHCA listing). Thereafter, Henley exchanged an unknown and disputed number of communications with Randy and Emily via telephone and email.[1] The content of the oral

---

[1] Defendants have the same surname, so the Court will use their first names to avoid confusion.

communications is a matter of dispute; Henley testified that Emily said she wrote the review with Randy and posted it. (Doc. 142-14, pp. 4-5 (Henley Dep., pp. 155-56).)[2] In her testimony, Emily denied making these statements and stated that she told Henley that Randy wrote the review. (Doc. 160-2, pp. 12-13 (Emily's Dep., pp. 38, 42-43).) Obviously, this is a factual dispute that the Court cannot resolve, so for purposes of this motion the Court accepts that Emily did not make such a statement. Regardless, on March 13, 2018, Henley sent Emily and Randy an email (at an email address that incorporates Emily's name) stating in part: "Emily, you made inferences during our conversation that suggest you might have been the one to actually write and publish the libelous review. Thus, we may have to name you both in a suit initially until the court determines who is responsible. That's a legal question and attorneys will answer it." (Doc. 142-8, p. 6.)

Plaintiff filed suit against Randy and Emily in state court in April 2018. (Doc. 1-1, pp. 1-11.)[3] The original Petition contained five counts, but only Counts I, II, and IV asserted claims for relief. Those claims, respectively, were: libel, negligence, and tortious interference with business expectancy. These three counts sought actual damages. Count II sought punitive damages, and Count V sought injunctive relief to (1) preclude Defendants from "publishing any statements about Plaintiff" and (2) require "Defendants to remove from Plaintiff's page on the TripAdvisor's website any profile or statements about Plaintiff." (Doc. 1-1, p. 9.) Emily filed her Answer in August 2018, and her Answer included a counterclaim for abuse of process. (Doc. 40.) In her counterclaim, Emily alleges that Plaintiff named her as a defendant "without probable cause to believe [that she] published the subject review, and with full knowledge that [Randy] published"

---

[2] Unless otherwise specified, all page numbers are those generated by the Court's CM/ECF system.

[3] When the suit was first filed, "Dancing Cow Farms" was listed as a defendant. However, "Dancing Cow Farms" was a fictitious name and thus incapable of being sued, and the Court dismissed "Dancing Cow Farms" on August 2, 2018. (Doc. 37.)

3

it. (Doc. 40, ¶ 64.) The counterclaim further alleges that Henley "threatened legal action against Emily Winchester, with full knowledge she did not write the review at issue, for the purpose of persuading Randy Winchester to remove the review, for fear of not only a lawsuit against him, but also against his daughter." (Doc. 40, ¶ 49.) Plaintiff later filed an Amended Complaint to include allegations about additional publications made by Defendants, (Doc. 65), and Emily reasserted her counterclaim in her Answer to the Amended Complaint. (Doc. 68, ¶ 28.)

Plaintiff seeks summary judgment on several grounds, all of which are opposed by Defendant. For the reasons stated below, the Court concludes that Plaintiff is entitled to summary judgment on Emily's counterclaim because there are no facts that would permit a jury to conclude that Plaintiff acted with an improper purpose. This conclusion makes it unnecessary to address Plaintiff's other arguments.

## II. DISCUSSION

### A. Summary Judgment Standard

A moving party is entitled to summary judgment on a claim only upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). However, not all undisputed facts will justify summary judgment; as Rule 56(a) suggests, only undisputed *material* facts can do so. "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted).

In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be *reasonably* drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). "The nonmoving party is entitled to all reasonable inferences that may be drawn from the evidence but not to inferences that may only be drawn by resorting to speculation." *Williams v. City of Carl Junction, MO,* 480 F.3d 871, 873 (8th Cir. 2007) (cleaned up); *see also Hill v. Southwestern Energy Co.,* 858 F.3d 481, 487 (8th Cir. 2017).

Finally, a party opposing a motion for summary judgment may not simply deny the allegations but must point to evidence in the Record demonstrating the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010). A motion for summary judgment "may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment" is satisfied. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The moving party can make this showing by demonstrating the respondent's inability to prove facts necessary to support her claim. *Id.* at 322-23. "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325; *see also St. Jude Med., Inc. v. Lifecare Int'l, Inc.,* 250 F.3d 587, 596 (8th Cir. 2001). The moving party still "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the Record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323. But, "[i]t is enough for the movant to bring up the fact that the record does not contain [evidence to support the] issue and to identify that part of the record which bears out this assertion. Once this

5

is done, [the moving party's] burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists . . . it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.,* 838 F.2d 268, 273-74 (8th Cir. 1988). "It is well-established that when a movant for summary judgment points out to the court an absence of evidence to support an essential element for which the nonmovant will have the burden of proof at trial, the nonmovant must make a sufficient showing that there is a genuine issue of fact as to that element." *Barnwell v. Watson,* 880 F.3d 998, 1005 (8th Cir. 2018); *see also Bedford v. Doe,* 880 F.3d 993, 996-97 (8th Cir. 2018).

### B. Abuse of Process

A claim for abuse of process requires proof that "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Ritterbusch v. Holt,* 789 S.W.2d 491, 493 (Mo. 1990) (en banc) (quotation omitted). The first element requires evidence "that the process was used to accomplish an unlawful end or that it compelled the defendants to do something they could not be legally compelled to do." *Teefey v. Cleaves,* 73 S.W.3d 813, 818 (Mo. Ct. App. 2002). Evil motive alone is insufficient; "[n]o liability attaches where a party has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil a motive he possessed at the time." *Pipefitters Health & Welfare Tr. v. Waldo R., Inc.,* 760 S.W.2d 196, 198-99 (Mo. Ct. App. 1988); *see also Diehl v. Fred Weber, Inc.,* 309 S.W.3d 309, 320 (Mo. Ct. App. 2010).

Significantly, the merits of the claim asserted are irrelevant to a subsequent abuse of process claim. This is true even if the party employing the process to assert the initial claim knows

that the effort lacks merit. "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse even if the plaintiff . . . knowingly brought suit upon an unfounded claim." *Jenkins v. Revolution Helicopter Corp.,* 925 S.W.2d 939, 945 (Mo. Ct. App. 1996); *see also Dillard Dep't Stores, Inc. v. Muegler,* 775 S.W.2d 179, 183 (Mo. Ct. App. 1989). This is the key distinction between a claim for abuse of process and a claim for malicious prosecution. "The difference between a claim for malicious prosecution and abuse of process is not the commencement of an action without justification but the misuse of process for an end other than that which it was designed to accomplish." *Diehl,* 309 S.W.3d at 320; *see also Impey v. Clithero,* 553 S.W.3d 344, 352 (Mo. Ct. App. 2018).

Plaintiff seeks to have the review taken down, and Emily concedes that this is a proper purpose of the lawsuit – so long as the suit is filed against the proper defendant. She theorizes that Plaintiff filed suit against her solely to exert pressure on Randy to remove the review from TripAdvisor, but identifies no evidence that would permit a jury to conclude that Plaintiff named her as a defendant solely to pressure Randy. The case is thus distinguishable from those cases in which Missouri courts have found a viable claim for abuse of process, in that Missouri courts require evidence establishing that the party invoking process did so to achieve an improper objective. For instance, in *National Motor Club of Missouri, Inc. v. Noe,* 475 S.W.2d 16 (Mo. 1972), the plaintiff filed the same suit against the defendant in multiple states, and there was evidence in the record that the plaintiff's representative "admitted that the purpose of filing the other suits . . . was to cause defendants to expend great attorney fees to defend the suits." *National Motor Club,* 475 S.W.2d at 23. In *Ritterbusch,* the defendant "caused Ritterbusch to be arrested by making a complaint in the Kansas City Municipal Court charging that [Ritterbusch] had maliciously damaged" his car. *Ritterbusch,* 789 S.W.2d at 492. Later, the defendant "offered to

7

withdraw his complaint if Ritterbusch would pay the alleged claim for damage to the car" and there was evidence that the criminal complaint had been filed solely to compel such payment. *Id.*

Unlike these cases, the Record in this case is devoid of evidence that would permit a jury to conclude that Plaintiff named Emily a defendant for an improper purpose. Emily insists that there is a factual dispute as to whether Plaintiff had a good basis for naming her as a defendant. She surmises that if the jury concludes that she did not tell Henley that she was involved in writing and posting the review, then the jury might conclude that Henley acted for the improper purpose of exerting pressure on Randy. This theory depends entirely on speculation; even if the jury finds the claim was unfounded, it can only speculate as to Plaintiff's purpose because there is no evidence on that issue. Relatedly, Emily's claim depends upon a fact that is irrelevant to this cause of action: the quality or merits of Plaintiff's claim against her. Finally, Emily relies on the lack of a basis for the claim against her to prove that Plaintiff lacked a proper purpose for the suit, but this reasoning is contrary to those cases (such as *Jenkins*) holding that knowledge that the claim is unfounded is not enough to impose liability for abuse of process.

What Emily is essentially attempting is to present a malicious prosecution claim under the guise of an abuse of process claim:[4] she has presented evidence suggesting that there was no basis for the claim – which is insufficient to establish an abuse of process – coupled with her theory about a possible improper purpose. If this were sufficient to establish an abuse of process claim, the difference between abuse of process and malicious prosecution would be eliminated.[5]

---

[4] Emily does not contend that her counterclaim pleads malicious prosecution.

[5] A recent decision from the Missouri Supreme Court supports this analysis. As of this writing, the decision has been publicly announced but not yet released for publication in the permanent law reports. In that case, *Trustees of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC,* 2019 WL 3793761 (Mo. Aug. 13, 2019) (en banc), the plaintiff on the abuse of process claim attempted to prove the improper purpose by relying on evidence of the defendant's improper motive. The Missouri Supreme Court held that this was insufficient, explaining that

Here, Plaintiff's attempt to have the review removed was a proper purpose of this litigation. Emily does not dispute that this is a proper purpose of the litigation as a general matter; she alleges that it was improper *as to her* because Plaintiff had no basis for its claim against her. This does not establish an abuse of process claim, so Plaintiff is entitled to summary judgment on the counterclaim.

### III. CONCLUSION

Plaintiff's Motion for Summary Judgment, (Doc. 141), is **GRANTED** and Plaintiff is granted summary judgment on Emily Winchester's counterclaim.

**IT IS SO ORDERED.**

Date: August 30, 2019

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[t]he test for liability in an abuse of process claim is whether the process has been used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he could not legally be compelled to do. The ulterior motive may be inferred from the wrongful use made of the process, but the use itself may not be inferred from the motive. It is improper to conflate these two separate elements by inferring an improper use of process from bad motive.

*Trustees of Clayton Terrace Subdivision,* 2019 WL 3793761 at *5.